ANTONIO L. CORTÉS
Law Office of Antonio L. Cortés
233 Julale Center
424 West O'Brien Drive
P.O. Box BV
Hagåtña, Guam 96932
Telephone No.: (671) 477-1930
Facsimile No.: (671) 477-1933

Attorneys for Defendant/Third-Party Plaintiff
Gold Coast Aviation International, Inc.



IN THE DISTRICT COURT

OF GUAM

| | |
|---|---|
| KRISTINA M. MALMQUIST, ) | CIVIL CASE NO.02-00019 |
| ) | |
| Plaintiff, ) | **DEFENDANT GOLD COAST** |
| ) | **AVIATION INTERNATIONAL,** |
| v. ) | **INC.'S TRIAL BRIEF** |
| ) | |
| GOLD COAST AVIATION ) | |
| INTERNATIONAL, INC., ) | |
| ) | |
| Defendant/ ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CHRISTOPHER B. FARR, ) | |
| ) | |
| Third-Party Defendant. ) | |
| ) | |

Defendant Gold Coast Aviation International, Inc. (GCA) submits this trial brief. pursuant to Local Rule 16.7 (b) of the United States District Court of Guam and F.R. Civ. Proc. Rule 6(a).



Case 1:02-cv-00019   Document 18   Filed 08/22/2003   Page 1 of 9

# I. FACTUAL CONTENTIONS

GCA contends that the following facts are true:

1. GCA is a corporation formed by Mr. William Tresky in 1996

2. GCA operates out of its corporate headquarters in Litchfield Park, Arizona

3. GCA is a small, family-owned company run chiefly by Mr. Tresky, his wife Stephanie Tresky, and his mother Georgia Tresky.

4. GCA provides security screening to the United States Air Force at Anderson Air Force Base in Guam.

5. GCA's Guam operations began in 1999, after it won a contract to provide screening services at Anderson air Force Base.

6. Christopher B. Farr supervised GCA's Guam operations from the outset until July 13, 2001.

7. Mr. Farr's authority regarding significant personnel decisions was limited to advising Mr. Tresky, who made the actual decisions.

8. Mr. Farr lacked authority to hire, fire, or discipline employees.

9. GCA had no reason to suspect that its choice of Mr. Farr would put its employees at risk of sexual harassment.

10. GCA had a policy of zero tolerance of sexual harassment and that any confirmed harassment would result in the immediate termination of the offender.

11. GCA took reasonable steps to make all of its employees, including Mr. Farr and Ms. Malmquist, aware of its anti-sexual harassment policy.

12. GCA took reasonable steps to provide employees a means to contact Mr. Tresky and GCA headquarters about sexual harassment concerns.

2

13. The nature of GCA's Guam operations make it absolutely imperative that its employees, who are all security screeners, remain on the job until relieved..

14. GCA security makes it clear to all screeners upon employment, verbally and in writing, that if they leave their posts before being relieved they will be subject to termination.

15. Plaintiff applied for employment in November 1999.

16. She was hired by GCA soon afterward, and began working on January 14, 2000.

17. She was made aware, verbally and in writing, of GCA's policy that security screeners would be subject to termination for leaving their posts prior to being relieved.

18. It is uncertain whether Mr. Farr subjected Ms. Malmquist to some unwanted sexual comments and/or touching.

19. During Plaintiff's employ, her husband, Mr. Anthony Malmquist, was an Air Force enlisted person detailed to work for the Passenger Desk at the Anderson passenger terminal, from where he could clearly view GCA's operations.

20. On or about July 12, 2000, Mr. Tresky terminated Ms. Malmquist for repeatedly leaving her work station prior to the end of her shift and prior to the arrival of her relief and failing to relieve her replacements on time. He also considered her prior discipline for taking home confidential documentation belonging to GCA pertaining to its relationship with the Contracting Officer, presumably to reveal to her husband whose work put him in contact with the Contracting Officer.

3

21. When he made this decision, Mr. Tresky had no reason to suspect Mr. Farr of sexual harassment of Plaintiff.

22. Only after her termination did Ms. Malmquist notify GCA that Mr. Farr had allegedly subjected her to sexual harassment. When she did, Mr. Tresky promptly confronted Mr. Farr with that charge, and Mr. Farr strenuously denied that any such thing had occurred. Mr. Tresky then strictly admonished Mr. Farr that no sexual harassment would be tolerated and reminded him that he would be fired if any was confirmed.

23. Mr. Tresky made a reasonable effort to seek corroboration of Ms. Malmquists's charges, but found none. The actual ground for her termination, leaving her security screening post prior to being relieved on more than one occasion, was well corroborated.

24. When GCA is able to confirm that its supervisors violate its zero tolerance of sexual harassment policy, it does terminate them.

## II. LEGAL BRIEF

A. **Issues of Law Necessary to Determine This Case.**

GCA submits that the following rules determine the sufficiency of Plaintiff's claims in this case.

1. **Plaintiff Has the Burden of Proving That the Alleged Acts of Farr Were So Severe and Pervasive that They Altered the Conditions of Her Employment and Created an Abusive Working Environment.**

The "[m]ere utterance" of sexually discriminatory remarks that "engender offensive feelings in an employee" do not necessarily create a violation of Title VII. Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L. Ed. 662

4

(1998), *quoting* Rogers v. EEOC, 454 F.2d 234 (5th Cir. 1971). A Plaintiff claiming sexual harassment actionable under Title VII must show that the harassment was "so 'severe and pervasive' as to "'alter the conditions of [the victim's] employment and create an abusive working environment.""" Faragher, *supra*, 118 S.Ct at 2283, *quoting* Meritor Sav. Bank v. Vinson, 477 U.S. 57, 91 L.Ed. 2d 49, 106 S. Ct. 2399 (1986).

> 2. **If Farr Created an Actionably Hostile Work Environment, GCA Is Not Liable because It Took Reasonable Steps to Insure that Malmquist's Work Environment Would Be a Normal One and Ms. Malmquist Did Not Report Any Alleged Harassment until after She Had Been Terminated for Other Reasons.**

In a hostile work environment case, employers are neither automatically liable nor insulated from liability simply because they have no knowledge of the alleged harassment. Rather, it was Congress's intent that the courts look to *agency principles* for guidance in determining liability for harassment. Meritor Sav. Bank v. Vinson, 477 U.S. 57, 91 L.Ed. 2d 49, 106 S. Ct. 2399 (1986).

Applying those principles, the Supreme Court has determined that, unless the harassment consisted of a "tangible employment action," as discussed below, an employer is not necessarily vicariously liable for the creation of a hostile work environment by the immediate supervisor by means of severe and pervasive discrimination. The employer is not vicariously liable for such discrimination if the employer took reasonable care to prevent and promptly correct any sexually harassing behavior and the employee unreasonably failed to take advantage of the corrective opportunity offered by the employer. Faragher, *supra*, 118 S. Ct. at 2293.

The steps taken by GCA to discourage and prevent sexual harassment, should be found to constitute reasonable care to avoid harassment of the type Plaintiff

complains of here. Faragher, *supra*, 118 S. Ct. at 2293.("the employer of a small work force . . . might expect that sufficient care to prevent tortious behavior could be exercised informally.") In the context of this case, Plaintiff's failure to mention any discrimination to GCA until after she was terminated for leaving her post was not reasonable.

    3.    **GCA's Termination of Ms. Malmquist Is Not Actionable as a Tangible Employment Action.**

GCA's foregoing affirmative defense to vicarious liability for Mr. Farr's alleged creation of a hostile work environment would not be a defense to "tangible employment action" discrimination. Faragher, *supra*, 118 S. Ct. at 2293, Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 2269, 141 L. Ed. 633 (1998). "Tangible employment action" discrimination is established, "where the Plaintiff proves that a tangible action resulted from a refusal to submit to a supervisor's sexual demands." Burlington, *supra*, 118 S. Ct. at 2265. GCA's termination of Ms. Malmquist was, however, for her repeated tardiness and abandonment of her post without relief. Her termination was, for that reason, was not the result of any alleged harassment by Mr. Farr, about which Mr. Tresky was unaware. Whether or not Plaintiff acceded to any alleged sexual requests by Mr. Farr, Mr. Tresky would still have had to terminate her to preserve the safety of the air passengers leaving Anderson. Mr. Tresky's termination of Ms. Malmquist could not be said to be a result of her declining any alleged sexual advances by Mr. Farr.

    4.    **In the event Mr. Farr Is Found to Have Committed Sexual Harassment against Plaintiff, GCA Should Have Judgment Against Mr. Farr for All Costs It Has Incurred as a Proximate Result of His Sexual Harassment.**

In the event the jury finds that Mr. Farr did sexually harass Plaintiff, Mr. Farr is liable to GCA if (a) he had a duty to GCA to refrain from sexually harassing

6

Plaintiff, (b) sexually harassing Plaintiff would place GCA at unreasonable risk of harm; (c) that duty was breached; (d) as a result of that breach GCA suffered harm or damages. *see, e.g.,* Leon Guerrero v. DLB Construction Co., 1999 WL 257425 (Guam April 30, 1999), citing Restatement (Second) Torts § 158 (1988). In that case, GCA should recover from Mr. Farr all injury it has suffered as a proximate result of his breach.

**B. Evidentiary Issues.**

    1. GCA asserts that documents evidencing an EEOC determination obtained by Plaintiff prior to bringing this action are not admissible and should not be mentioned by Ms. Malmquist or her attorney in the presence of the jury. Gilchrist v. Jim Slemons Imports, 803 F.2d 1488 (9th Cir. 1986); Lathem v. Dept of Children and Youth Services, 172 F. 3d 786 (11th Cir. 1999); *see also* Hakanson-Black v. United Pacific Insurance Co., 865 F. 2d 264 (9th Cir. 1988) [unpublished opinion]. GCA asserts that the following documents and their contents should not be offered, introduced, or referred to in the presence of the jury: (a) EEOC Determination dated February 22, 2002; (b) EEOC letter to GCA dated March 12, 2002 re enforcement and settlement of EEOC Determination; (c) EEOC letter to GCA dated March 20, 2002 re enforcement and settlement of EEOC Determination; (d) EEOC letter of predetermination dated February 13, 2002; (e) GCA letter to EEOC dated February 20, 2002; and (f) any other documentation of EEOC's determinations of facts or questions to be placed before the jury at trial.

    2. GCA contends that any offers it might have made to Plaintiff, including those made through EEOC, should not be admissible in relation to prove liability or validity of Plaintiff's claims. F. R. Evid. 408. GCA asserts that the following documents and their contents should not be offered, introduced, or referred to in the

7

presence of the jury absent a clear need to do so outside the scope of the Rule 408 protection: (a) EEOC letter to GCA dated March 12, 2002 re enforcement and settlement of EEOC Determination; (b) GCA letter to EEOC dated March 15, 2002 re enforcement and settlement of EEOC Determination; (c) EEOC letter to GCA dated March 20, 2002 re enforcement and compromise of EEOC Determination; (d) emails between Plaintiff and EEOC dated March 25, 2002 and April 10, 2002 re enforcement and compromise of EEOC's determination; and (e) any other documentation of attempts to negotiate settlement of the EEOC determination.

   3.   GCA may wish to object to the admissibility of remedial steps it has taken after it became aware of Ms. Malmquist's allegations. Van Gordon v. Portland General Electric, 667 P. 2d 532 (Ore. 1983).

   4.   GCA desires to work with the other parties to submit a stipulated exhibit list.

   5.   GCA desires that the parties stipulate to admissibility of documents wherever possible in order the focus trial on factual issues for jury consideration.

   6.   GCA desires that the parties stipulate to undisputed facts in order to shorten and focus trial.

   7.   GCA may seek jury instructions regarding presumptions to be drawn from failure to provide documents that Plaintiff verbally asserts she once had, such as return receipts for alleged letters allegedly sent to GCA via registered mail.

   8.   GCA may seek a jury instruction that Plaintiff's failure to produce her husband for deposition, and the fact that he cannot be subpoenaed under Air Force

8

rules, entitles GCA to a presumption that his testimony would have supported GCA's case.

### III. ATTORNEYS' FEES

The Court has discretion to award prevailing-party attorneys' fees pursuant to 42 U.S.C. § 2000-5(k).

### IV. ABANDONED ISSUES

Having received from Mr. Farr at least some of the GCA documents alleged in the Complaint to have been taken by Mr. Farr, GCA is willing to abandon its claim for conversion of those documents, without waiving any right it may have to refer to that alleged act at trial as necessary to conduct its defense.

Respectfully submitted this 22nd day of August 2003.

_____
ANTONIO L. CORTÉS, counsel for
Defendant/Third-Party Plaintiff Gold Coast
Aviation International, Inc.